```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MISSOURI
                          EASTERN DIVISION

GREGORY PORTER,                  )
                                 )
            Petitioner,          )
                                 )
    v.                           )         No. 4:03 CV 651 DJS
                                 )                          DDN
DAVE DORMIRE,                    )
                                 )
            Respondent.          )
```

**REPORT AND RECOMMENDATION OF**
**UNITED STATES MAGISTRATE JUDGE**

This action is before the court upon the petition of Gregory Porter for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petition was referred to the undersigned United States Magistrate Judge for review and a recommended disposition under 28 U.S.C. § 636(b). Pursuant to the Memorandum and Order filed September 10, 2004, counsel was appointed to represent petitioner under the Criminal Justice Act, 18 U.S.C. § 3006(A). (Doc. 14.) An evidentiary hearing was held on February 15, 2005.

On August 18, 2000, in the Circuit Court of St. Charles County, Missouri, petitioner Porter pled guilty to first-degree burglary, first-degree robbery, armed criminal action, and two counts of forgery. (Doc. 8 at 39-40.) He was sentenced to concurrent terms of fifteen years imprisonment for the burglary, thirty years for the robbery, three years for the armed criminal action, and five years for each forgery charge.

Petitioner moved for post-conviction relief under Missouri Supreme Court Rule 24.035. The circuit court denied the motion without a hearing. (Id. at 41-42.) The denial of relief was affirmed on direct appeal. (Resp. Ex. E.)

On May 29, 2003, Porter filed his petition for a writ of habeas corpus in this court pursuant to § 2254. He alleges one ground for relief: his plea counsel rendered ineffective assistance of counsel for permitting him to plead guilty while he was under the influence of anti-psychotic medication. (Doc. 4 at 6.) According to petitioner, he was prescribed Thorazine, an anti-psychotic drug, while in jail. He alleges he made his plea counsel aware of the medication and of the effects of

the drug, which caused him to feel drowsy.  Petitioner alleges he asked his attorney to request a continuance of the plea hearing, but counsel failed to do so.  (Id.)

The plea transcript indicates that the following colloquy occurred during the plea hearing:

> Q. [by the court] Is there anything in connection with this case that you've asked of your attorney that he has not done?
>
> A. [by petitioner] No.
>
> Q. Are you fully satisfied with the services which your attorney has rendered to you?
>
> A. Yes.
>
> Q. Are you at the present time under the influence of any alcohol, narcotic or drug?
>
> A. No.
>
> Q. Are you sleepy or drowsy?
>
> A. No.
>
> Q. Are you having any difficulty understanding or participating in this proceeding?
>
> A. No.
>
> Q. And do you understand that you have the following rights, to maintain your plea of not guilty to this offense?
>
> A. Correct.
>
> * * *
>
> Q. Have you been forced, threatened, or coerced by anyone to get you to plead guilty?
>
> A. No.
>
> * * *
>
> Q. Are you pleading guilty here today freely and voluntarily?
>
> A. Yes.

> Q. Who made the final decision that you would enter a plea of guilty?
>
> A. I did.

(Resp. Ex. B. at 8-9, 17-18.)

Petitioner claims that he did not hear the judge ask him if he was under the influence of drugs but only heard the judge ask him if he was under the influence of alcohol. He argues that the Thorazine rendered him incapable of understanding the proceedings and the rights he was surrendering by pleading guilty. He also argues that it affected his ability to give accurate answers to the judge's questions. (Doc. 4 at 6.)

On February 15, 2005, the undersigned conducted an evidentiary hearing under 28 U.S.C. § 2254(e)(2), to determine whether petitioner was under the influence of Thorazine at the time of his guilty plea, and whether his counsel's failure to request a continuance of the plea hearing was constitutionally ineffective assistance.

From the evidence adduced at the February 15, 2005, evidentiary hearing, which included the testimony of petitioner Porter, petitioner's defense attorney David Dalton, and expert witness Dr. Dwayne Hagen, the undersigned makes the following findings of fact:

**I. FACTS**

The undersigned credits the testimony of Dr. Dwayne Hagen in finding the following facts:

1. Psychiatrist[1] Dwayne Hagen, M.D., is in private practice at St. John's Mercy Medical Center in St. Louis. Several months before the evidentiary hearing he reviewed Porter's medical records from the St. Charles County Jail. Dr. Hagen has not conducted a medical or psychiatric evaluation of Porter, but he observed him for a few minutes before the evidentiary hearing, while Porter met with his appointed hearing counsel.

2. Porter has been diagnosed with bi-polar disorder with psychosis and chronic paranoid schizophrenia for which he has been

---

[1] The parties stipulated to Dr. Hagen's Curriculum Vitae and the credentials set forth on it, Joint Exhibit 2.

prescribed medications. During August 2000, and at the time of his state court plea proceeding, Porter was prescribed 100 milligrams of Thorazine twice daily, and 100 milligrams of Tegretol three times a day.[2]

3. Thorazine is a major tranquilizer. It has a calming and sedative action, as well as some anti-psychotic action. Porter was taking a moderate dosage of Thorazine on August 18, 2000. Dr. Hagen opined that the dosage possibly was sufficient to impair or affect Porter's ability to understand his plea proceedings. However, because there is a strong individual component to the reaction to the medication, the effects of Thorazine vary depending upon the individual patient. It is possible that the amount of Thorazine Porter was prescribed did not affect him to the extent that he claims. Dr. Hagen opined that the combination of medications Porter was prescribed, Thorazine and Tegretol, could have enhanced the sedative effects of the Thorazine.

4. At the beginning of his plea proceeding, the transcript indicates that Porter spoke softly and his attorney asked him to speak up. Dr. Hagen opined that Porter's speaking softly could indicate that he was suffering from the effects of the drugs. However, it is also possible, according to Dr. Hagen's testimony, that Porter was speaking softly because, among other reasons, he was sitting too far away from the microphone.

The undersigned credits the testimony of attorney David A. Dalton, Sr. in finding the following facts:

5. David A. Dalton, Sr., currently retired, had previously served as a circuit judge in St. Charles County, Missouri, for 20 years. He has also practiced law. As a circuit judge, he accepted very many guilty pleas.

6. Dalton was Porter's counsel during the subject guilty plea in August 2000. Before the plea, he negotiated the plea agreement with the state. While he could not remember the specific number of times he

---

[2] A copy of the medication chart from petitioner's St. Charles County Jail records was received in evidence as Joint Exhibit 1.

met with Porter before the guilty plea, he met with him on the morning of the plea and on several other occasions.[3]

      7.   While Dalton did not recall whether he asked Porter if he was on medications the morning of his plea, Porter never informed him he was on Thorazine. From prior conversations with Porter and from reviewing Porter's records, Dalton knew that Porter had been on medications; however, Porter never demonstrated to him that he was not competent.

      8.   On the morning of the plea, Dalton conversed with Porter in the jury box. Dalton asked Porter whether he understood the nature of the proceedings and what was going to happen. Porter did not appear to Dalton to be lethargic. To Dalton, Porter appeared to understand what he was saying. Dalton advised Porter that he would be required to serve 85% of his time before he would be eligible for parole.

      9.   Dalton had previously reviewed with Porter all the questions that the judge would ask. When he was a judge, Dalton used the same set of questions. He had also previously given Porter a copy of those questions so he would have time to read and review them.

      10.   On the morning of the plea, Dalton felt confident that Porter was competent to proceed. Porter never told Dalton that he was "high" or otherwise affected by any medication, and he never asked Dalton to continue his plea. If Dalton had seen any indication that Porter was under the influence of medication or was otherwise mentally unfit, Dalton would not have allowed Porter to proceed with the plea, and would have informed the judge.

      11.   Dalton never told Porter how to answer any question at his guilty plea hearing.

      The undersigned does not credit the testimony of petitioner Gregory Porter to the following facts:

---

[3]Porter testified at the federal evidentiary hearing that he, albeit for the first time, met with attorney Dalton two days before the plea and Dalton told him he had negotiated a 30 year sentence and that this was a good deal for Porter.

- 5 -

     a.    Throughout the day of the plea everything was "fuzzy." He felt hallucinogenic, and objects appeared to be 10 to 15 yards in front of him.

     b.    Dalton knew that he was on medication the morning of the guilty plea proceeding. When Porter met with Dalton before the proceeding, Dalton asked Porter how the medication was affecting him, and Porter responded that he felt bad and was not in his right senses. Porter told Dalton that he did not have his "psychological senses right," his medication was "hurting" him and making him feel "strange," and he couldn't keep up with the conversation.

     c.    Porter nevertheless proceeded with his plea because he was advised to do so by Dalton. Porter asked if he could get a continuance for a day or two. Dalton told Porter that everything was already set up, this was his "best deal," and they should go forward with the plea.

     d.    Dalton told him to answer yes to all the questions, and that Dalton would give him a head shake when the answer was no. Every time Porter would sober up and have questions to ask Dalton, Dalton told him he would handle everything.

     e.    When during the plea proceeding, the court asked Porter if he was taking any narcotic, alcohol or drugs, Porter said, "No" without realizing this meant "no" to medication. Contrary to his plea responses, Porter did not understand what was happening. He just watched his lawyer. Porter never had a sober moment from the time he was offered the plea to the time he accepted it.

     f.    Porter did not advise the judge that he was unable to proceed with the plea, because he had asked Dalton to notify the judge.

     g.    Porter did not realize that, if he went to trial, he could have received consecutive sentences instead of concurrent sentences.

## DISCUSSION

**A.    Exhaustion of state remedies and procedural bar**

For a state prisoner to obtain federal habeas corpus review under 28 U.S.C. § 2254, he must have fully exhausted all remedies available in the state courts for the ground he presents in federal court. See 28 U.S.C. § 2254(b); Coleman v. Thompson, 501 U.S. 722, 731 (1991); Sloan v. Delo, 54 F.3d 1371, 1378 (8th Cir. 1995), cert. denied, 516 U.S. 1056 (1996).

Respondent concedes that petitioner has exhausted his available state remedies, because he afforded the state courts an opportunity to review the federal ground in his motion for post-conviction relief. (Doc. 8 at 2.)

**B. Standard of review on the merits**

This court's review of a state court decision is limited to situations when adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). "A state court's decision is contrary to clearly established law 'if the controlling case law requires a different outcome either because of factual similarity to the state case or because general federal rules require a particular result in a particular case.'" Tokar v. Bowersox, 198 F.3d 1039, 1045 (8th Cir. 1999) (quoting Richardson v. Bowersox, 188 F.3d 973, 977-78 (8th Cir. 1999), cert. denied, 529 U.S. 1113 (2000)), cert. denied, 531 U.S. 886 (2000). The issue a federal habeas court faces when deciding whether a state court unreasonably applied federal law is "whether the state court's application of clearly established federal law was objectively reasonable." Williams v. Taylor, 529 U.S. 362, 409 (2000) (plurality opinion).

Respondent argues that petitioner's claim must fail because the Missouri Court of Appeals's decision was neither contrary to nor an unreasonable application of federal law as petitioner's claim is without merit. (Doc. 8 at 6-7.)

**C. Merits of Federal Habeas Ground**

Petitioner alleges that his Sixth Amendment rights were violated, because he received ineffective assistance of plea counsel because his attorney failed to request a continuance for his plea hearing while he was under the influence of anti-psychotic medication. (Doc. 4 at 6.)

The Missouri circuit court made the following findings of fact and conclusions of law on petitioner's ground for relief:

> Movant's sole claim is that counsel was ineffective in allowing Movant to plead guilty while allegedly under the influence of thorazine, a tranquilizer. Unfortunately for Movant, this claim is refuted by his own testimony during the guilty plea of August 18, 2000. On page 8, line[s] 22-24, Movant was specifically asked by this court if he was "under the influence of any alcohol, narcotic, or drug." Under oath, he answered in the negative.
>
> Pursuant to Missouri Supreme Court Rule 24.035(b), the files and records of the case conclusively show that Movant is entitled to no relief.

(Doc. 8 Ex. A1 at 42.) The court did not discuss petitioner's allegation that the record of the plea proceedings was flawed, because the words he spoke during the proceedings wrongly indicated that he understood what he was saying. Petitioner's further allegation that his counsel knew of this impairment and should have requested a continuance is not refuted by the record made at the time the guilty plea was entered and accepted.

To establish a violation of his right to effective assistance of counsel, petitioner must establish by a preponderance of the evidence that: (1) counsel failed to exercise the customary skill and diligence that a reasonably competent attorney would perform under similar circumstances, and (2) petitioner suffered actual prejudice by his counsel's failure to perform competently. Strickland v. Washington, 466 U.S. 668, 687 (1984)). To prove prejudice, he must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Id. To satisfy this second prong, petitioner must show that he "would not have pleaded guilty and would have insisted on going to trial" but for counsel's actions. Hill v. Lockhart, 474 U.S. 52, 58-59 (1985).

In determining whether counsel's assistance was inadequate, the inquiry must be whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of competent assistance. Strickland, 466 U.S. at 690. Moreover, scrutiny of counsel's performance must be highly deferential, because there is a temptation to second-guess counsel's assistance after a conviction and because it is easy to conclude that a particular act or omission was unreasonable in hindsight. Id. That counsel rendered constitutionally adequate assistance is presumed. Id.; Kenley v. Bowersox, 275 F.3d 709, 712 (8th Cir.), cert. denied, 537 U.S. 919 (2002).

In this case, the Missouri Court of Appeals ruled:

> A thorough review of the plea transcript demonstrates that [petitioner] responded with unequivocal, straightforward and lucid answers to the questions posited by the court. He indicated that he was not under the influence of any alcohol, drug, or narcotic and that he was not sleepy or drowsy. The trial court thoroughly questioned [petitioner] regarding the effect of his guilty plea and sentencing, and he indicated that he understood the ramifications. The trial court asked [petitioner] if he understood the charges filed against him as well as the penalties, and he responded in the affirmative. Finally, [petitioner] stated that he was freely and voluntarily entering into the guilty plea.
>
> While [petitioner] argues that his ingestion of thorazine affected both his ability to understand the plea process and his ability to give accurate answers to the questions asked by the judge, we are constrained by our standard of review. The facts alleged by [petitioner] are refuted by the plea transcript and record that is before us. Because [petitioner] is not entitled to relief, the motion court did not err in denying his motion for post-conviction relief without an evidentiary hearing.

(Doc. 8 Ex. E at 4)(internal citation omitted.)

After carefully considering the record of this action, including the transcript of the guilty plea proceeding and the evidence adduced at the federal habeas hearing, contrary to petitioner's testimony, the undersigned finds that petitioner did not tell his plea counsel that he was under the influence of Thorazine which was making him drowsy and he did not ask his plea counsel to request a continuance. Furthermore, plea counsel saw no indication of incompetency on the part of petitioner which would detract from the accuracy of the findings of the circuit

court and the Missouri Court of Appeals based upon the guilty plea transcript.[4] Therefore, petitioner's counsel did not render constitutionally ineffective assistance of counsel as alleged by petitioner.

For these reasons,

**IT IS HEREBY RECOMMENDED** that the petition of Gregory Porter for a writ of habeas corpus be denied.

The parties are advised they have fifteen days to file written objections to this Report and Recommendation. The failure to file timely, written objections will waive the right to appeal issues of fact.

                                                 */s/ David D. Noce*

**DAVID D. NOCE**
**UNITED STATES MAGISTRATE JUDGE**

Signed on July 21, 2005.

---

[4] While not determinative, the undersigned notes that the transcript of the guilty plea proceedings on several occasions indicates that petitioner's statements indicated an alert mind, sufficient for him to recognize that to continue with the same answers would not be appropriate. (Doc. 8 Ex. B at 6, ls. 10, 12, 14, 16; at 8, ls. 14, 21, 24; at 9, l. 8; at 17, l. 13; at 18, ls. 14, 17, 23; at 20, l. 4; at 21, ls. 9, 20, 22; at 27, ls. 11, 20, 22.)